UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MYZAFER CEKA, Individually and on Behalf of
All Other Persons Similarly Situated,

                    Plaintiff,

        v.

PBM/CMSI INC., PBM, LLC, SCOTT MAGER,
ABC CORPORATIONS #1-10, and JOHN DOES
#1-10, Jointly and Severally,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

1:12-CV-01711 (DAB) (DCF)

CERTIFICATION OF DOUGLAS B. LIPSKY

DOUGLAS B. LIPSKY, hereby certifies to the Court as follows:

1.     I am a member of the Bar of this Court and a partner of the law firm Bronson Lipsky LLP, attorneys for Plaintiff Myzafer Ceka ("Plaintiff") and all other persons similarly situated in this matter.  I submit this Certification in support of the parties' joint application for preliminary approval of the class and collective action settlement.  I know the facts testified to in this Certification to be true based on my own personal knowledge and a review of the documents.

2.     Bronson Lipsky LLP ("Bronson Lipsky") has extensive experience prosecuting class and collective actions and is qualified to represent Plaintiff Ceka and the class members.  Bronson Lipsky has no interest that is adverse to the class.  Attached to this Certification as Exhibit A is a short biography of Bronson Lipsky.

3.     I have associated in this matter with Jeffrey M. Gottlieb, Esq., who also has substantial experience prosecuting class actions, and have attached as Exhibit B a short biography of the law firm of Gottlieb & Associates.

A.      Investigation of the Class Claims

4.      The parties engaged in meaningful informal discovery before agreeing to resolve this case.  This included reviewing Plaintiff Ceka's wage records for each year he worked for Defendants, discussing with Plaintiff Ceka his claims and Defendants' defenses to his claims, reviewing and analyzing the Class Members' time and wage records, and discussing with Plaintiff Ceka the results of reviewing and analyzing the Class Members' time and wage records.

5.      Bronson Lipsky and Gottlieb & Associates ("Plaintiff's Counsel") interviewed Plaintiff Ceka regarding the nature of his duties working for Defendants, the hours that he worked, his rate of pay, Defendants' time tracking policies, the compensation they did and did not receive, and the widespread nature of the Defendants' alleged illegal practices.

6.      As part of their investigation, Plaintiff's Counsel analyzed the information Defendants produced on the class size (approximately 360), the hours worked per week by each Class Member, the rate of pay for each Class Member, and the compensation each Class Member received.

7.      As part of their investigation, using the information Plaintiff and Defendants provided, Plaintiff's Counsel was able to determine the amount owed to the Class Members from March 5, 2006 to December 31, 2010 to equal $421,235.00 in compensatory damages.

8.      Through this investigation, Plaintiff's Counsel was able to analyze the strengths and weaknesses of Plaintiff's claims.

9.      During this investigation, Plaintiff's Counsel considered the substantial expense and length of time necessary to prosecute the litigation through class certification, trial, post-trial motions and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this complex litigation.  In considering these factors, Plaintiff's Counsel made an

informed decision that it is in the best interest of Plaintiff Ceka, and the Class Members to settle this matter on the terms described in the Settlement Agreement, and that such Settlement is fair, reasonable and adequate to the Class Members.

B.    Settlement Negotiations

10.    The parties began settlement negotiations shortly after Defendants' filed their May 14, 2012 Amended Answer.   They then engaged in several arm's-length settlement negotiations, which included six settlement teleconferences with The Honorable Debra C. Freeman, U.S.M.J.: April 11 and 29, 2013, May 30, 2013, June 20, 2013, and July 11 and July 19, 2013.

11.    During these negotiations, Defendants disclosed they had previously settled certain overtime claims, which are within the scope of the Complaint, with the Service Employees International Union amounting to $14,391.79.   Plaintiff's Counsel accordingly agreed to deduct this $14,391.79 settlement from the $421,235.00 in compensatory damages, leaving $406,843.21 in owed compensatory damages.   Plaintiff's Counsel added 25% in liquidated damages to the compensatory damages, bringing the revised demand to $508,554.01.

12.    The negotiations culminated with the parties agreeing to settling this matter in mid-August 2013 for $500,000.00.   After numerous iterations, the parties agreed upon and fully executed the November 20, 2013 Settlement Agreement, which is attached hereto as Exhibit C. During these negotiations, it was unclear whether Defendants can withstand a greater judgment.

13.    As part of these terms and conditions, the parties have negotiated the timing and allocation of the payments, the scope of the release and the nature and content of the Settlement Notice and Claim Form.

14.     In Plaintiff's Counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiff and the Class Members would have achieved had they prevailed on all of their claims and survived a trial and appeal.  The $500,000.00 settlement therefore equals 100% of their owed compensatory damages damages.  Based on their experience, Plaintiff's Counsel anticipates the Class Members will react favorably to this settlement upon being informed of the terms.

15.     In agreeing to the Settlement, Plaintiff's Counsel considered that a substantial risk exists that, if this suit proceeded, class certification would be denied, and that, even if certification were granted, Plaintiff and the Class Members might not have prevailed on any or all of their claims.  Plaintiff's Counsel also considered the likelihood that Defendants would appeal any adverse rulings, which would, at a minimum, substantially delay any recovery and present a risk that such rulings would be reversed in Defendants' favor.

16.     The parties entered into the Settlement Agreement (the "Settlement Agreement") as of November 20, 2013.

17.     The Settlement Agreement is fair and reasonable.

C.     Calculation of Individual Settlement Amounts

18.     The Class Members who are eligible and entitled to receive payments under the Settlement Agreement are those who have not properly and timely exercised their opt-out rights ("Settlement Class Members").

19.     The Settlement Agreement creates a fund of $500,000.00 to settle this case (the "Fund").  The Fund covers class members' awards, service payment, payment for Plaintiff Ceka's individual claim, attorneys' fees and costs, and taxes.  Any funds unclaimed after the claims period shall revert to Defendants.

20.     The Class Members will be paid under an allocation formula that reflects specific factors: the weeks each Class Member worked; the compensation owed for the years 2006 to 2008 is for unpaid overtime and the compensation owed for the years 2009 to 2010 is for off-the-clock work; and the monetary value of a week worked between 2009 and 2010 is 2.15 times more than during 2006 and 2008.  Under this formula, Class Members will receive $121.50 for every week worked between 2006 and 2008 and $261.06 for 2009 and 2010.  The underlying calculations supporting this formula are detailed in Exhibit C to the Agreement.

21.     The Settlement Class Members' settlement payment shall include their claims under the FLSA and NYLL.

D.     Conclusion

22.     These settlement terms are fair, reasonable and adequate.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements by me are willfully false, I am subject to punishment.

Dated: New York, New York
       December 9, 2013

s/ Douglas B. Lipsky
Douglas B. Lipsky
BRONSON LIPSKY LLP
630 Third Avenue, Fifth Floor
New York, New York 10017
Phone:  212.392.4772
Fax:  212.444.1030
dl@bronsonlipsky.com

*Attorneys for Plaintiff Ceka*

# EXHIBIT A

BRONSON LIPSKY LLP
630 Third Avenue, Fifth Floor
New York, New York 10017
Phone: 212.392.4772 Fax: 212.444.1030
email: dl@bronsonlipsky.com
www.bronsonlipsky.com

## BRONSON LIPSKY LLP – FIRM DESCRIPTION

Douglas B. Lipsky co-founded Bronson Lipsky LLP on August 2, 2011. Mr. Lipsky is a practitioner who focuses exclusively on employment law and complex wage and hour litigation.

Mr. Lipsky received dual undergraduate degrees, in Finance and Political Science, from the University of Arizona in 2000. Mr. Lipsky subsequently graduated from Seton Hall University School of Law *cum laude* in 2003.  During the summer after his first year of law school, Mr. Lipsky served as an intern for the Honorable Alfred J. Lechner, Jr. (retired), United States District Court Judge for the District of New Jersey. Upon graduating from law school, Mr. Lipsky served as a law clerk for the Honorable Arthur D'Italia, Superior Court of New Jersey, Law Division, Hudson County (retired).

After completing his clerkship, in September 2004, Mr. Lipsky joined the employment law department of Bressler, Amery & Ross, P.C. in Florham Park, New Jersey. Three years later, he joined the employment law department of Gibbons, P.C. in Newark, New Jersey. While at those firms, Mr. Lipsky focused on representing employers against single and multi-plaintiff cases involving employment law.  In November 2007, Mr. Lipsky joined the employment law department of Seyfarth Shaw LLP in New York, New York. While at Seyfarth Shaw, Mr. Lipsky represented employers in defending against complex wage and hour class and collective actions under the Fair Labor Standards Act and state laws.  In one such case, he defended an employer in a nationwide class and collective action that involved claims of alleged *de facto* deductions that purportedly reduced the class members' wages below the statutory minimum wage: *Teoba v. Trugreen Landcare LLC*, 1:10-cv-6132769 (W.D.N.Y. 2011).  In another such case, he defended an employer in a nationwide class and collective action, in which the plaintiffs alleged they were misclassified as exempt from receiving overtime: *Tracy v. NVR, Inc.*, 1:04-cv-6541 (W.D.N.Y.).  While at Seyfarth Shaw, Mr. Lipsky was also a contributing author to a definitive treatise on wage and hour litigation: Wage & Hour Collective and Class Litigation, ALM Law Journal Press (2012).

On August 2, 2011, Mr. Lipsky co-founded Bronson Lipsky LLP, where he has litigated several complex wage and hour cases on behalf of employees. He has been appointed as class counsel in other class and collective actions under the New York Labor Law ("NYLL") and Fair Labor Standards Act ("FLSA") for unpaid overtime and other wage and hour violations.  *See, e.g., Spencer v. No Parking Today, Inc.*, 1:12-cv-6323 (ALC) (AJP) (S.D.N.Y.) (class action involving 1,000 members); *Gay v. Tri-Wire Engineering Solutions, Inc.*, 1:12-cv-2231 (KAM) (JO) (E.D.N.Y.) (class action involving over 200 members); *Stillman v. Read and Succeed, LLC, et al.*, 1:12-cv-3856 (JBW) (JO) (E.D.N.Y.) (class involving approximately 50 members); *Sewell v. Allparking Management Inc.*, 1:11-cv-8039 (PKC) (S.D.N.Y) (class action involving approximately 80 members); *Cheek v. VIP*

*Concierge, Inc.*, 1:12.-cv-4445 (JMA) (E.D.N.Y.) (class action involving over 60 members).  He is likewise serving as lead counsel on other hybrid class and collective actions under the NYLL and FLSA.  *See, e.g, Brabham v. Mega Tempering & Glass Corp.*, 1:13-cv-54 (JG) (VMS) (involving failure to pay overtime claim to approximately 80 factory workers); *Tutein v. Esteemed Patrol Inc.*, 1:12-cv-1847 (KAM) (RER) (E.D.N.Y.) (off-the-clock and failure to pay overtime claims involving 400 security guards); *Mateo v. Universal Language Corporation,* 1:13-cv-2495 (NGG) (JO) (involving claims that almost 1,000 translators were misclassified as exempt for overtime purposes); *Rodriguez v. Product and Data Center LLC, et al.*, 1:11-cv-6371 (E.D.N.Y.) (involving claims that a category of employees was misclassified as exempt from receiving overtime); *Ruzic v. T.N. 888 Eighth Avenue, LLC,* 1:12-cv-2063 (S.D.N.Y.) (involving claims of waiters being paid below the tipped minimum wage).

Mr. Lipsky serves on the New York State Bar Association Wage and Hour Committee. Mr. Lipsky is a member of the New York State Bar and New Jersey State Bar, and he is admitted to the Southern, Eastern, Western and Northern Districts of New York and the District Court of New Jersey.

# EXHIBIT B

GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: 212.228.9795

GOTTLIEB & ASSOCIATES—FIRM DESCRIPTION

Gottlieb & Associates was founded by Jeffrey M. Gottlieb who has been practicing law since 1974. Gottlieb & Associates' practice is limited to litigation on behalf of clients on a contingency basis in the areas of consumer rights, tenants' rights with respect to the rent stabilization laws in New York City and employees' rights to minimum and/or overtime wages pursuant to the Fair Labor Standards Act (FLSA) and/or state labor laws. Most of Gottlieb & Associates' cases are on a class or collective action basis.

Mr. Gottlieb graduated from S.U.N.Y. Albany in 1970 with a B.S. degree in Public Accounting and he then went on to Albany Law School of Union University where he graduated with a J.D. degree cum laude in 1973. At Albany Law School, he was a member of the Justinian Honorary Society and a member of the Board of Editors of the Albany Law Review, where he also published an article in the Law Review. He was also awarded the Trustees' scholarship at Albany Law School. Subsequent to graduation, he became an adjunct professor of law and maintained that position until 1978. Simultaneously, he was an associate attorney at Kohn, Bookstein & Karp, Esqs., Albany, New York.

Mr. Gottlieb left Albany to pursue an LL.M. degree from NYU School of Law which he obtained in 1979 with a concentration in Intellectual Property Rights and Trade Regulation. In the subsequent year, Mr. Gottlieb was an associate at Sargoy, Stein and Hanpt which was special counsel to the Motion Picture Association of America (MPAA) and he represented most of the major United States film distributors.

In 1980, Mr. Gottlieb started his own private practice of law and, in 1998, co-founded the firm of Berger & Gottlieb Attorneys where he remains a partner. He is also the founding partner of the law firm of Gottlieb & Associates Attorneys. Mr. Gottlieb was admitted to practice law in the Courts of the State of New York as well as the Federal Courts in 1974. He is also admitted to practice in the United States Court of Appeals, 2nd Circuit, United States Tax Court, United States Court of Claims and the Supreme Court of the United States.

Mr. Gottlieb has been counsel in over 300 class or collective action cases in state and federal courts throughout the United States. In the consumer field, these actions involve major automobile manufacturers, cable providers, telephone carriers, the City of New York and toy manufacturers. The genesis of these actions include: UDAP violations, breach of contract, products liability, tort and related claims. With respect to employment class/collective actions, the defendants are in many different industries.

Jeffrey Gottlieb has represented plaintiffs involved in consumer class action lawsuits including: *Fare v. Seiko Communications of America, Inc.* (represented consumers involving wireless communication services); *Yusef v. City of New York and Sheriff of City of New York* (seeking damages and injunctive relief involving improper charges levied against judgment debtors); *O'Hara v. Fisher-Price, Inc.* (damages for sales of defective children's products); *Tegnazian v. Consolidated Edison Inc.* (consumer and business damages resulting from electric utility blackout); *In Re: PNC Leasing LLC.* (early termination fees on automobile leases); *Samuel*

-1-

*v. Time Warner, Inc.* (damages for improper charges for cable television services); *Smith v. Chrysler Credit Corp.* (discriminatory interest rates on automobile financing); *Cunningham v. Mattel, Inc.* (seeking damages and injunctive relief for consumers for deceptive trade practices); *Muhammad Bhatti et al v. Nissan North America, Inc* (seeking damages for consumers based upon deceptive acts and practices and warranties) and *Oh v. AT&T* (damages and injunctive relief for unreasonable practices in violation of F.C.C. tariffs).

Jeffrey M. Gottlieb has also been co-counsel in numerous class/collective action cases on behalf of employees pursuant to the FLSA and/or state labor laws: *Herring v. Hewitt,* USDC NJ ("benefit analysts"); *Chowdhury v. Duane Reade*, USDC SDNY (settled on behalf of assistant store managers); *Cumberbatch v. UPS*, USDC SDNY; *Williams v. Uptown Communications*, USDC SDNY; *BJ's Wholesale Club* (settlement of $9.3 million for misclassified certain mid-manager employers); *Francis v. A&E Stores, Inc.,* USDC SDNY (misclassification of assistant store managers); *Stillman v. Staples*, USDC NJ (settlement of $42 million on behalf of approximately 5,500 assistant store managers); *Ravenell v. Avis*, USDC EDNY (misclassification of shift managers); and numerous other cases.

In 2007, Dana Lauren Gottlieb joined Gottlieb & Associates and became an Associate Attorney in 2008. Ms. Gottlieb was awarded her J.D. degree in 2007 from New York Law School and was admitted to the New York State Bar in 2008. Ms. Gottlieb is also admitted to the United States District Courts in the Southern and Eastern Districts of New York. Ms. Gottlieb has been counsel in over 75 Fair Labor Standards Act/New York Labor Law class/collective action lawsuits. Ms. Gottlieb received her B.A. degree from New York University, *cum laude*, in 2001 and her M.A. degree from Columbia University in 2003. Additionally, she has interned at the Office of William J. Clinton, former President of the United States, as well as for the Honorable Sherry Klein Heitler, Justice of the Supreme Court, New York County.

EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MYZAFER CEKA, Individually and on Behalf of
All Other Persons Similarly Situated,

                Plaintiff,

     v.

PBM/CMSI INC., PBM, LLC, SCOTT MAGER,
ABC CORPORATIONS #1-10, and JOHN DOES
#1-10, Jointly and Severally,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

1:12-CV-01711 (DAB) (DCF)

## SETTLEMENT AND RELEASE AGREEMENT

Plaintiff Myzafer Ceka ("Ceka"), individually and on behalf of a class of others similarly situated ("Plaintiffs"), PBM/CMSI Inc., PBM, LLC and Scott Mager, together with their corporate parents, affiliates, divisions, assigns, subsidiaries, predecessors and siblings (collectively, "Defendants"), have entered into this Settlement and Release Agreement (this "Agreement") to settle all issues between them. Except to the extent governed by federal law, the statutes and common law of The State of New York, excluding any mandate that the use of another jurisdiction's laws, shall govern the interpretation of this Agreement.

## I.    BACKGROUND

### A.    PROCEDURAL HISTORY

1.    Named Plaintiff Ceka filed this lawsuit on March 13, 2012 asserting claims under the Fair Labor Standards Act and the New York Labor Law. In August 2012, the Parties began exchanging relevant payroll data and employment information. In pursuing the claims of Class Members, and in evaluating the merits of the Settlement, Class Counsel has discussed at-length

the claims and defenses with Ceka, investigated the applicable laws, and thoroughly investigated facts regarding the claims of the Class Members, potential defenses to Plaintiff's claims, and the damages the Class incurred.

2.      In an effort to reach a settlement in this lawsuit, Class Counsel and Defendants' Counsel engaged in extensive arm's-length settlement negotiations beginning on November 5, 2012, including teleconferences with the Honorable Debra C. Freeman, U.S.M.J.  The parties worked diligently and on September 17, 2013, the Parties were able to agree in principal to the settlement terms.  During the subsequent weeks, the Parties worked together in finalizing the settlement, and this Joint Stipulation of Settlement and Release Agreement.

3.      The Parties are fully and adequately informed of all facts necessary to evaluate the case for settlement and do not believe that additional discovery would materially advance an understanding of the facts or law in this case.

B.      DEFENDANTS' DENIAL OF WRONGDOING

1.      Defendants contend that all of their employees were compensated in compliance with the law and deny any alleged failure to pay wages, including overtime pay.  Defendants denied, and continue denying, each of the claims and contentions alleged by the Named Plaintiff in the Action, and deny any wrongdoing or legal liability arising out of any facts or conduct alleged in the Action.  Defendants have nevertheless concluded that further litigation would be protracted and expensive and would divert management and employee time.  Defendants have taken into account the uncertainty and risk inherent in litigation and concluded that it is appropriate to fully and finally settle this Action in the manner and upon the terms set forth in this Agreement.  Neither this Agreement, nor any document referred to or contemplated in this Agreement, nor any action taken to carry out this Agreement, may be construed as, or may be

used as, an admission, concession, or indication by or against Defendants of any fault, wrongdoing or liability of any kind.

C.    INADMISSIBILITY OF AGREEMENT.

1.    Neither this Agreement, nor any document, statement, or proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendants, including any evidence of a presumption, concession, indication, or admission by Defendants of any liability, fault, wrongdoing, omission, concession, or damage. Nor shall this Agreement be disclosed, referred to, offered or received in evidence against Defendants in any further proceeding in this Action, or in any other civil, criminal, or administrative action or proceeding except for the purposes of settling this Action or enforcing the settlement of this Action.

II.    TERMS

The Parties agree as follows:

A.    DEFINITIONS

1.    Action means this lawsuit, *Myzafer Ceka v. PBM/CMSI Inc., PBM, LLC and Scott Mager*, Case No. 1:12-cv-1711 (DAF) (DCF).

2.    Agreement or Settlement Agreement means this Settlement and Release Agreement.

3.    Named Plaintiff or Plaintiff means Myzafer Ceka.

4.    Defendants means Defendants PBM/CMSI Inc., PBM, LLC and Scott Mager, together with their former and present parents, subsidiaries, and affiliated entities, and their

-3-

present, former and future officers, directors, employees, partners, shareholders, attorneys and agents, and any other successors, assigns, or legal representatives.

5.      Claims Administrator means a neutral third-party Administrator Defendants have selected and hired at their own expense to perform specific duties, including: (i) mail the Notice of Settlement and Claim Form, with an enclosed return envelope, to each Class Member; (ii) to perform one address update check/skip trace to locate Class Members in the event a Notice of Settlement and Claim Form are returned by the U.S. Post Office for lack of a valid or current address; (iii) to re-mail the Notice of Settlement and Claim Form to any Class Member for whom the Claims Administrator performed a skip trace; (iv) to track and monitor all Claim Forms, opt-out requests or objections to the Settlement; (v) to distribute the settlement payments to the Class Members; (vi) distribute any additional notices regarding Settlement (e.g., adjournment of the Approval Hearing); and (vii) payment of all Employee Payroll Tax and Employer Payroll Tax obligations, including but not limited to the Employer share of FICA, FUTA and SUTA out of the Qualified Payment Fund (as defined below in Paragraph II.A.19). The Claim Administrator is further responsible for issuing appropriate forms associated with payments of any amounts to Class Members, including but not limited to, issuing the Internal Revenue Service ("IRS") Forms W-2 and 1099 for all amounts paid to the Class Members.  Defendants have selected Rust Consulting, Inc. as the Claims Administrator.

6.      Claim Form means the form approved by Class Counsel and Defendants, subject to Court approval, which, to recover a portion of the Settlement Payment, each Class Member must complete in full and mail, via First Class U.S. Mail, within sixty (60) days following mailing of the Notice of Settlement after the Court preliminarily approves the settlement.  This sixty (60) day period does not re-start in the event the U.S. Postal Service returns the Notice of

Settlement and Claim Form as undeliverable and the Claims Administrator mails the Notice of Settlement and Claim Form a second time to the Class Member.

7.      <u>Class Member(s)</u> means: (i) the Named Plaintiff, and (ii) individuals who worked for Defendants as a "crew member," "cleaning crew member" or "porter" during the Covered Period who were not compensated for all hours worked, including not being paid overtime premium pay.

8.      <u>Class Counsel</u> means Douglas B. Lipsky, Esq., of the law firm Bronson Lipsky LLP and Jeffrey M. Gottlieb of Gottlieb & Associates, which represent the Named Plaintiff and the Class Members.

9.      <u>Cost of Administration</u> means the actual and direct costs reasonably charged by the Claims Administrator, who Defendants' counsel will select, for its services in administering the settlement.

10.     <u>Court</u> means the U.S. District Court for the Southern District of New York.

11.     <u>Covered Period</u> means 12:01 a.m on March 5, 2006 through 11:59 p.m., December 31, 2010.

12.     <u>Defendants' Counsel</u> means Mark E. Spund, Esq. of Davidoff Hutcher & Citron LLP.

13.     <u>Gross Fund</u> means the gross Settlement Payment of $500,000.00, which is the maximum amount Defendants will be required to pay under this Settlement Agreement.

14.     <u>Final Approval Order</u> means the Court's Order Granting Final Approval of the Class Action Settlement, which shall be in the form attached to this Agreement as Exhibit D, subject to the Court's revisions and approval.

15.     Settlement Class or Settlement Class Member means any Class Member (defined above in Paragraph II.A.7) who files a timely and valid Claim Form and who does not opt-out of the settlement.

16.     Settlement Payment means the amount of $500,000.00 to be paid by Defendants in full settlement of the Class Members' claims.  The Settlement Payment shall be wired to an account set up by the Claims Administrator.

17.     Net Settlement Fund means the Settlement Payment to be paid by Defendants under this Agreement after deductions for Court approved attorneys' fees, costs and expenses for Class Counsel, Court approved Enhancement Payment and all taxes including employer's share of payroll taxes.

18.     Non-Settlement Class Member means a Class Member who submits a timely request to opt-out of the Settlement as provided by the procedures set forth below in Paragraphs II.F.9 and 11.

19.     Qualified Payment Fund or QSF means the account established by the Claims Administrator for the Settlement Payment paid by Defendants

20.     Party or Parties means the Named Plaintiff, Class Members, and Defendants.

21.     Preliminary Approval Order means the Order entered by the Court preliminarily approving, *inter alia,* the terms and conditions of this Agreement, the manner and timing of providing notice to the Class and the time period for opt-outs and objections.

22.     Released Person(s) means PBM/CMSI Inc., PBM, LLC and Scott Mager, all their current and former parents, subsidiaries, or corporate siblings, and, with respect to each of them, their predecessors and successors, and, with respect to each such entity, all of its past, present, and future employees, officers, directors, stockholders, owners, representatives, assigns,

-6-

attorneys, agents, insurers, benefits plan, plan fiduciaries and/or administrators, and any other persons acting by, through, under or in concert with any of these persons or entities, and their successors.

23.    Settlement Effective Date means the first business day after the last of the following occurrences: (i) the date on which to appeal the Final Approval Order has expired with no appeal or other judicial review having been taken or sought, or (ii) if an appeal of the Final Approval Order has been timely filed, the date the Final Approval Order is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review or the date the appeal(s) or other judicial review are finally dismissed with no possibility of subsequent appeal or other judicial review.

24.    Settlement Formula means the mathematical formula created by Class Counsel as described in Exhibit C to this Agreement.

25.    Settlement Share means each Class Member's share of the Net Settlement Fund as provided for in this Agreement.

B.     PRELIMINARY APPROVAL OF SETTLEMENT MOTION

1.    As soon as practicable following execution of this Agreement, the Parties shall submit to the Court a joint Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") drafted by Class Counsel, which shall include a proposed order (i) granting preliminary approval of the Settlement; (ii) conditionally certifying this matter as a class action under Fed. R. Civ. P. 23(a) and (b)(3); (iii) appointing Plaintiff's counsel as Class Counsel; (iv) approving the Notice of Settlement and Claim Form; (v) appointing the Claims Administrator; and (vi) scheduling the Final Approval Hearing (the "Preliminary Approval Order").

2.     The proposed Preliminary Approval Order will include the findings required by Fed. R. Civ. P. 23(a) and (b)(3).  The Preliminary Approval Motion will also seek the setting of date(s) for Class Members to file Claim Forms or provide objections to this Agreement, which will be a date no earlier than sixty (60) days from the successful mailing of Notice to the Class Members, and for a Approval Hearing for Final Approval of the Settlement Agreement before the Court.

3.     In the Preliminary Approval Motion, the Parties will inform the court of the intended process to obtain a "Final Approval Order" that will, among other things: (i) approve the settlement as fair, adequate and reasonable; (ii) incorporate the terms of the Release, as described herein; (iii) dismiss the Action with prejudice; (iv) award Class Counsel attorneys' fees and reimbursable expenses; and (iv) award an Enhancement Payment, if any, to the Named Plaintiff.

4.     If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement agreement, the Action will resume as if no settlement had been attempted.  Defendants retain the right to contest whether the Action should be maintained as a class action or collective action and to contest the merits of the claims being asserted in the Action.

C.     BENEFITS

1.     Settlement Payment.  In exchange for the release of claims in Paragraph II.C., the parties have agreed to a "claims-made reversionary common fund" settlement with the Gross Fund in the amount of $500,000.00.  By no later than ten (10) business days after the Settlement Effective Date, Defendants shall pay to the Claims Administrator the sum of $500,000.00 by

deposit into an Escrow Account administered by the Claims Administrator.  Defendants may pay these funds earlier at their discretion.

2.      Reversion.  Any unclaimed funds will revert to Defendants.  Further, after the expiration of one hundred eighty (180) days following issuance of payments to Named Plaintiff and any Settlement Class Member, any check not cashed shall become part of the reversion to Defendants.  However, in the event Defendants are notified in writing that a check has not been cashed by reason of a Settlement Class Member being on active military duty, such payment shall not revert to Defendants until sixty (60) days following the end of such Settlement Class Member's active duty status.  Except for any amount payable to any Settlement Class Member on active military duty for whom Defendants have received written notice, the Claims Administrator shall refund any unused portion to Defendants on the 181st day following issuance of such payments to Named Plaintiff and Settlement Class Members.

3.      Attorneys' Fees and Costs.  Class Counsel may apply to the District Court for an award of fees, costs, and expenses in this Action (the "Fee Application"), not to exceed one-third (1/3) of the Settlement Payment.  Defendants will not object to the reasonableness of the amount. Any fees, costs and expenses approved by the Court will be paid out of the Settlement Payment. Plaintiff and Class Counsel, however, reserve the right to make an application to the Court for additional fees in the event substantial efforts are necessary to enforce the terms of this Agreement, including, but not limited to, a motion to the Court to enforce the terms of this Agreement.

4.      Service Payment.  Defendants will not oppose an Enhancement payment to the Named Plaintiff in such amounts to be determined by Class Counsel but not to exceed the amount of $10,000.00 to be paid out of the Settlement Payment, subject to Court approval.  The

Named Plaintiff will receive an IRS Form 1099 with respect to the Enhancement payment. The Named Plaintiff agrees to sign a General Release in consideration for receipt of the Enhancement Payment, if any.

5. <u>Consent to Class Certification</u>. For settlement purposes only, the parties stipulate to, and request that the Court certify (i) an opt-out class action under Fed. R. Civ. P. 23(a) and (b)(3) for all Class Members, and (ii) an opt-in collective action under 29 U.S.C. § 216(b) ("216(b)") for all Class Members. The Parties agree that certification for settlement purposes is not an admission by Defendants that Rule 23 class and 216(b) collective action certification would be proper absent settlement. For purposes of settling this lawsuit, the Parties stipulate and agree that the requisites for establishing class and collective action certification with respect to the Class Members (as defined above in Paragraph II.A.7) have been, and are, met.

D. <u>APPROVAL HEARING AND MOTION FOR FINAL APPROVAL AND DISMISSAL.</u>

1. At the Approval Hearing and Motion for Final Approval and Dismissal, the Parties will request that the Court, among other things: (i) approves the settlement set forth in the Agreement as, in all respects, fair, reasonable, adequate and in the best interests of the Class Members in accordance with Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216; (ii) order the Agreement is binding on the Named Plaintiff and Settlement Class Members; (iii) order payment of the Enhancement Payment to the Named Plaintiff; (iv) order the attorneys' fees and expenses to be paid to Class Counsel from the Gross Fund; (v) order Defendants to instruct the Claims Administrator to distribute Settlement Shares from the QSF to the Named Plaintiff and Settlement Class Members, including an Enhancement Payment, if any, to be paid to the Named Plaintiff as described in this Agreement; (vi) order Defendants to instruct the Claims Administrator to satisfy the employer obligations to pay all Employer Payroll Taxes and

withholdings from the QSF; (vii) order the dismissal with prejudice of all claims asserted in the Action and the claims of all Settlement Class Members, subject only to an application for relief under Fed. R. Civ. P. 60(b)(1), or 60(d); and (viii) order entry of Final Judgment in accordance with this Agreement.

2.    The Final Approval Order will order the Defendants to direct the Claims Administrator to (i) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Shares, (ii) retain copies of all of the endorsed settlement checks with releases, and (iii) provide Defendants' Counsel with the original or copies of the endorsed Settlement Checks in accordance with this Agreement and the Court's Final Approval Order.

3.    After entering the Final Approval Order, the Court will have continuing jurisdiction over the Action and the Settlement solely for purposes of (i) enforcing this Agreement, (ii) addressing Claims Administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law.

4.    If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Action will proceed as if no settlement had been attempted.

5.    If the Court does not grant Final Approval of the Agreement, the Defendants shall direct the Claims Administrator to provide notice to the Settlement Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Settlement Class Members under the Agreement.  Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notices within a reasonable timeframe of the relevant event.

E.    RELEASE OF CLAIMS

1.    Claims Released. Upon the Settlement Effective Date, each member of the Settlement Class will be deemed to have released claims, known and unknown, against the Released Persons. The scope of Settlement Class' release is set forth below in Paragraph II.E.2.

2.    Scope of Released Claims. By operation of the entry of the Final Approval Order, and except as to such rights or clams as may be created by this Agreement, the Named Plaintiff and each Settlement Class Member on behalf of themselves and each of their heirs, estates, executors, administrators, assigns, transferees and representatives, forever and fully releases the Released Persons (as defined above in Paragraph II.A.22) from all manner of actions, causes of action, lawsuits, claims, counterclaims, damages, debts, obligations, liabilities, promises, defenses, agreements, costs, expenses (including attorneys' fees), and demands of whatever kind or nature, whether based on statute, tort, contract, or other recovery theory, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that, as of the date that the Final Approval Order is entered, arise out of or are related to any cause of action under the New York Labor Law and/or Fair Labor Standards Act that is asserted in the Complaint against the Released Persons during the Covered Time Period. ("Released Claims").

3.    Release of Claims by Named Plaintiff. By operation of the entry of the Final Approval Order, the Named Plaintiff, who receives an Enhancement Payment and except as to such rights or clams as may be created by this Agreement, and his heirs, estates, executors, administrators, assigns, transferees and representatives forever and fully releases the Released Persons from the Released Claims (as defined above in Paragraph II.E.2) and from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

-12-

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the Released Persons, the Named Plaintiff and his successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement.

4.    Claim Form.  The Claim Form issued to the Settlement Class will include the release language in Paragraph II.E.2 above, and shall include a representation that the Settlement Class has been instructed to consult with Class Counsel, and has in fact consulted with Class Counsel, before signing the Claim Form and submitting them to Class Counsel.  A copy of the Claim Form is attached to this Agreement as Exhibit B.

5.    Effect of Opting Out.  If 15% or more of the Class Members revoke their participation in, or opt out of, this Action or this Agreement, Defendants shall have the unilateral right to rescind this Agreement.  If Defendants rescind this Agreement, (i) Defendants' obligations under this Agreement will cease to have any force and effect, (ii) this Agreement will be vacated, null, void and cancelled, (iii) the Parties will return to the *status quo ante* as if they had not entered into a settlement, and (iv) the settlement resulting in this Agreement, and all of the negotiations and proceedings relating to this Agreement, will be without prejudice to the rights of the Parties, and evidence of the settlement, this Agreement, the Parties' negotiations, and the Parties' mediation and related proceedings will be inadmissible and will not be discoverable.

6.    Effect of No Final Approval.  If there is no Final Approval of it, then this Settlement Agreement will become null and void provided that the failure by the Court or an appellate court to award or sustain the full amount of the Enhancement Payment or Class

Counsels' attorneys' fees and expenses will not constitute a failure to approve the Settlement or a material modification of the Settlement.

### F.    CLAIMS ADMINISTRATION

1.    <u>Duty of Cooperation</u>.  The Parties agree to cooperate in obtaining expeditious preliminary and final approval of this Agreement.

2.    <u>Data on Class Members</u>.  Within ten (10) business days after the Preliminary Approval Order is signed and entered by the Court, under protection of a confidentiality agreement, Defendants will provide to the Claims Administrator and Class Counsel a file in an electronic importable format (i.e. an Excel Spreadsheet will be produced in its native format) listing the names, last known addresses, social security numbers or dates of birth, weeks of employment, employment position (i.e., porter) of all Class Members.  Class Counsel agrees to keep this file and the information it contains confidential, and to use it for the purpose only of administering this settlement.

3.    <u>Allocating Settlement Amounts</u>.  After deducting the Court-approved attorneys' fees, costs, expenses, Enhancement Payment and Employer Payroll taxes, the remaining portion of the Settlement Payment shall be distributed among the Settlement Class according to a formula devised by Class Counsel primarily based on two factors: (i) the weeks worked by each member of the Settlement Class, and (ii) the year in which those weeks were worked.  This formula reflects that the amounts owed are greater in some years than others.  Within fifeen (15) business days after the Court's preliminary approval of the Settlement, Class Counsel will determine the appropriate allocations to Class Members and will provide this information to Defendants' Counsel.

4.    Notice of Settlement.  Defendants shall require the Claims Administrator to send a Notice of Settlement to each Class Member by U.S. First Class Mail, postage within thirty (30) days after the Preliminary Approval Order is signed and entered by the Court.  A copy of the proposed Notice of Settlement is attached to this Agreement as Exhibit A.  Defendants shall require the Claims Administrator to provide Class and Defendants' Counsel with a list of names and addresses of all Class Members to whom a Notice of Settlement was mailed within five (5) business days of mailing.  Defendants further agree to require the Claims Administrator to provide Class and Defendants' Counsel with a list of names of those Class Members whose Notice of Settlement was returned as undelivered within five (5) business days of receipt of any undelivered Notice of Settlement.  Within five (5) business days of receiving it, the Claims Administrator shall conduct an address check/skip trace for each Notice of Settlement that is returned as undelivered.  Within five business days of performing the address check/skip trace and to the extent a new address is identified, the Claims Administrator shall mail a second Notice of Settlement to the Class Member and provide written confirmation to Class Counsel of the second mailing.  If the second mailing is returned as undelivered, the Claims Administrator shall so notify Class Counsel in writing.  The Claims Administrator shall be under no obligation to perform a second address check/skip trace and make a third mailing, except if Class Counsel or Defendants independently learn of a new address for a Class Member.

5.    Claim Form.  Attached to the Notice of Settlement will be a Claim Form.  This Claim Form will include a statement that, by signing the Claim Form, the Class Member is memorializing his or her release of Defendants from all known and unknown claims as defined, and within the scope of, Paragraph II.E.2 above.  The Claim Form will also include blank IRS Forms W-4 and W-9.

6.     <u>Diligence in Finding Class Members</u>.   Defendants shall require the Claims Administrator to use standard devices, including the National Change-of-Address database or equivalent, to obtain forwarding addresses before mailing and to use appropriate skip tracing to take appropriate steps to maximize the probability that the Notice and Claim Form will be received by all Class Members.

7.     <u>Applicable Liability Periods</u>.   The Notices of Settlement and Claim Forms mailed to Class Members will indicate that the Parties' settlement covers the time period between March 13, 2006 and December 31, 2010.

8.     <u>Timely Claim Forms</u>.   Class Members will have sixty (60) days from the mailing of the Notice of Settlement to submit a Claim Form or to submit a written request for exclusion or objection.   Persons seeking to request exclusion must follow the process set forth below in Paragraph II.F.11.  No Claim Forms will be honored if postmarked late unless the late-filing Class Member establishes good cause.   Notwithstanding the foregoing, in the event a Class Member submits a Claim Form more than sixty (60) days after the mailing of the Notice of Settlement by reason of being or having been on active military duty, the Claims Administrator shall immediately notify Defendants and Class Counsel in writing and provide each a copy of the Claim Form if received before the reversion and release of any remaining amounts to Defendants of the Gross Fund.   Any Claim Form received by the Claims Administrator from a Class Member who establishes good cause for late-filing or certifies in writing to the delay in returning the Claim Form by reason of active military duty before reversion and release of any remaining amounts in the Gross Fund shall be treated as timely filed and payment shall be made in accordance with allocation formula (i.e. he or she will be a Settlement Class Member).   Claims

Administrator will review all Claim Forms and certify to Defendants' and Class Counsel those Claim Forms were timely filed.

9.      Time Period to Opt-Out for Class Members.  Class Members will have sixty (60) days from the mailing of the Notice of Settlement to mail a written request for exclusion to the Claims Administrator.  Persons seeking exclusion must do so in writing.

10.     Enforcing Deadlines.   Class Counsel will enforce the deadlines for Class Members to submit their Claim Form and to affirmatively opt-out.

11.     Opt-Out Procedures for Class Members.  Class Members seeking to exclude themselves from the Parties' settlement and this Agreement must provide their name, address, and the dates when they worked for Defendants, and must sign a statement stating that "I understand I am requesting to be excluded from the Parties' settlement and that I will receive no money from the Parties' settlement. I understand that if I am excluded from the Parties' settlement, I may bring a separate legal action seeking damages, but might recover nothing or less than what I would have recovered if I filed a claim under the Parties' settlement in this case" (the "Opt-Out Notice").  Each Opt-Out Notice must be sent to Claims Administrator.

12.     Rescinding Decision to Opt-Out for Class Members.  Class Members will be permitted to withdraw, or rescind, their Opt-Out Notices by submitting a "Rescission of Opt-Out Notice" to the Claims Administrator, which will include the following language: "I previously submitted an Opt-Out Notice seeking exclusion from the Parties' settlement. I have reconsidered and I wish to withdraw my Opt-Out Notice. I understand that by rescinding my Opt-Out Notice, I may be eligible to receive a distribution from the Settlement Payment and may not bring a separate legal action against Defendants with respect to any Released Claims." A Class Member wishing to submit a Rescission of Opt-Out Notice will sign and date the statement and deliver it

to Claims Administrator no later than sixty (60) days after Claims Administrator first mails the Notices of Settlement.

13.     Class Members Who Do Not Respond.   All Class Members, except for Non-Settlement Class Members, who do not submit a valid Claim Form, will not be allocated any portion of the Settlement Payment, even though they will be bound by the judgment dismissing this Action on the merits with prejudice.  Failing to respond will not, however, waive their FLSA claims.

14.     Deficient Claim Forms.   If a Claim Form is timely submitted, but is deficient in one or more aspects (e.g., the Release has been altered), Claims Administrator will return the Claim Form to the claimant within five (5) business days of receipt with a letter explaining the deficiencies and stating that the claimant will have five (5) business days from the date of the deficiency notice to correct the deficiencies and resubmit the Claim Form.   The envelope containing the resubmitted Claim Form must be postmarked within ten (10) business days of the date on the deficiency notice to be considered timely.

15.     Joint Motion for Final Approval.   Class Counsel will prepare, and Defendants will approve, a motion for final approval of the Parties' settlement.   Class Counsel will timely file the motion for final approval of the settlement, which will include the following relief: (i) a Final Approval Order adjudging the Agreement's terms to be fair, reasonable, and adequate, and directing consummation of its terms and provisions; and (ii) an order dismissing this action on the merits, with prejudice, in accordance with the terms of this Agreement.

16.     Approval Hearing. The Parties will request the Court hold a "fairness hearing" before issuing the Final Approval Order.   The Court will decide if the Parties' proposed settlement should be finally approved as fair, reasonable, and adequate.  If the Court adjourns the

Approval Hearing after the Notices of Settlement and Claim Forms are mailed to the Class Members, Claims Administrator shall notify any Class Member who submits a timely objection of the new Approval Hearing date.

17.     <u>Final Approval Order</u>.  The Final Approval Order will: (i) dismiss with prejudice all claims against Defendants in this Action; (ii) declare that all Settlement Class Members and all Class Members who did not timely and affirmatively opt-out of the settlement are bound by the Release of Claims described in Paragraph II.E.2. above; (iii) reserve jurisdiction over the construction, interpretation, implementation, and enforcement of the Parties' settlement and over administration and distributions from the Settlement Payment.

18.     <u>Distributing Settlement Payment</u>.  Defendants will require the Claims Administrator to complete the following tasks, subject to the terms of the Settlement Agreement, within twenty (20) business days after the Settlement Effective Date: (i) mail to Settlement Class Members checks with their respective Settlement Shares; (ii) mail the Service Payment to Named Plaintiff; (iii) mail to Class Counsel the award of attorneys' fees and expenses; and (iv) provide to Defendants and Class Counsel a statement of how much of the Gross Fund remains after distribution to Settlement Class Members for reversion to Defendants.  Class Counsel shall, within five (5) business days after the Effective Date, submit to Defendants a completed IRS Form W-9.

19.     <u>Inquiries or Communications from Class Members</u>. The Parties agree to cooperate to resolve any post-settlement inquiries or communications with Class Members.

20.     <u>Altering Dates</u>.  Upon written agreement, or with Court approval, the Parties may alter the above dates or time periods.

-19-

G.   PROMISES

1.   No Admission.  Nothing in this Agreement, or in any other document related to the Parties' settlement, will be construed as, or deemed an admission of, liability, culpability, negligence, or wrongdoing on the part of Defendant.  Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

2.   Taxes on Wage Payments.  The Parties recognize that fifty percent (50%) of the individual distributions from the Settlement Payment constitute wage income subject to an IRS Form W-2 reporting.  Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form W-2.

3.   Taxes on Liquidated Damages and Enhancement Payment.  The Parties agree that the enhancement payment, and fifty percent (50%) of each Settlement Class Member's Settlement Share, which is for alleged liquidated damages, are not wages.  Payments treated as liquidated damages shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099.  Payments of attorneys' Fees and costs shall be made without withholding.  Class Counsel will receive a Form 1099 for this payment.  Any Enhancement Payment made to Named Plaintiff shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

4.   Miscellaneous Issues Regarding Taxes.  Defendants will not be responsible for any tax liability arising from the allocation of the Settlement Payment as attorneys' fees, costs,

expenses, service award, taxable wage income, and taxable non-wage income.  All individual distributions made to the Settlement Class under this Agreement shall not be considered wages for purposes of calculating or recalculating benefits under the terms and conditions of any benefit plan maintained by Defendants for the benefit of their employees and their beneficiaries.

5.     Waiver of Appeals.  The Parties agree to waive all appeals and to stipulate to final certification of the FLSA action as a collective action and to class certification of the Rule 23 claims but only for purposes of implementing this Settlement.  Plaintiff and Class Counsel, however, reserve the right to appeal any denial or reduction in the amount of requested attorneys' fees and costs awarded by the Court.

6.     CAFA Compliance.  In compliance with 28 U.S.C. § 1715, Defendants will supply notice regarding the settlement of this Action to appropriate federal and state officials.

H.     CONFIDENTIALITY.

1.     Ceka and Class Counsel agree that they will not, directly or indirectly, discuss or otherwise disclose any of the facts underlying this claim, the existence of this Agreement to any wire service, newspaper, radio or television reporter or any other media representative including any legal article, legal periodical, journal, or case/settlement gathering source (the "Media").  Plaintiff and Class Counsel agree that they shall respond to any inquiry from the media regarding the resolution of the Action by stating, in substance, "The matter was amicably resolved."  This provision shall in no way limit Named Plaintiff and Class Counsel in fulfilling their role as class representative and class counsel, respectively.

I.     MISCELLANEOUS

1.     Authority.  The signatories represent they are fully authorized to enter into this Agreement and bind the Parties, including the Class Members, to these terms and conditions.

-21-

2.      Mutual Full Cooperation.  The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, executing such documents and taking such other action as may reasonably be necessary to implement the terms of their settlement.  The Parties to this Agreement will use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary or ordered by the Court, or otherwise, to effectuate this Agreement and the terms set forth in it.  As soon as practicable after execution of this Agreement, Class Counsel will, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's final approval of the Parties' settlement.

3.      No Prior Assignments.  The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged except as set forth in this Agreement.

4.      Notices.  Unless otherwise specifically provided in this Agreement, all notices, demands or other communications given will be in writing and will be deemed to have been duly given as of the third business day after mailing by U.S. registered or certified mail, return receipt requested, addressed as follows:

To the Settlement Class:

Douglas Lipsky
Bronson Lipsky LLP
630 Third Avenue, Fifth Floor
New York, New York 10017-6705

To the Defendants:

Mark E. Spund
Davidoff Hutcher & Citron LLP
200 Garden City Plaza, Suite 315
Garden City, New York 11530

5.      Construction.  The Parties agree that the terms and conditions of this Agreement are the result of lengthy, arm's-length negotiations between the Parties and that this Agreement

will not be construed in favor of or against any party by reason of the extent to which any Party, or the Party's counsel, participated in the drafting of this Agreement.

6.      <u>Construction of Captions and Interpretations</u>.  Paragraph titles or captions in this Agreement are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Agreement or any provision in it.

7.      <u>Modification and Waiver</u>.  This Agreement may not be changed, altered, or modified except in writing and signed by the Parties and approved by the Court.   This Agreement may not be discharged, except by performance in accordance with its terms or by a writing signed by the Parties.  The waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach.  If the Court modifies any portion of this Agreement without the consent of both Parties, either party may void this Agreement in its entirety.

8.      <u>Integration Clause</u>.  This Agreement includes the entire agreement between the Parties relating to the Agreement and transactions described herein, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or a Party's legal counsel, are merged in this Agreement.

9.      <u>Binding on Assigns</u>.  This Agreement will be binding upon, and will inure to the benefit of, the Parties and their respective heirs, trustees, executors, administrators successors, and assigns.

10.     <u>Class Signatories</u>.  Because of the volume of Class Members, it is impossible or impractical to have each Class Member execute this Agreement.  The Notice of Settlement will advise all Class Members of the binding nature of the release that will have the same force and

effect as if each Class Member, except for Non-Settlement Class Members, executed this Agreement.

11.     Applicable Law. This Agreement shall be governed by the common law and statutes of the State of New York, without regard to its principals of conflicts of law.

12.     Headings.  Section headings in this Agreement are included for convenience of reference only and shall not be part of this Agreement for any other purposes.

13.     Counterparts.  This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, and, when taken together with other signed counterparts, will constitute one Agreement, which, subject to Court approval, will be binding upon and effective as to all Parties.  Facsimile signatures or signatures provided through a Portable Document Format ("PDF") shall have the same force and effect as original signatures for purposes of this Agreement.

Executed this _19th_ day of _Nov_, 2013.

_____
On behalf of Defendant PBM/CMSI Inc.

_Chief Executive Officer_

Executed this _19th_ day of _Nov_, 2013.

_____
On behalf of Defendant PBM, LLC

_Chief Executive Officer & Managing Member_

Executed this _19th_ day of _Nov_, 2013.

_____
Scott Mager

-24-

Executed this _____ day of _____, 2013.

_____
Myzafer Ceka, Individually and on behalf of all
other persons similarly situated, including Class and
Collective Action Members


APPROVED AS TO FORM:                    DAVIDOFF HUTCHER & CITRON LLP

Dated: November _21_, 2013

                                        _____
                                        MARK E. SPUND
                                        200 Garden City Plaza, Suite 315
                                        Garden City, New York 11530
                                        Phone: 516.248.6400
                                        MES@dhclegal.com

                                        *Attorneys for Defendants*
APPROVED AS TO FORM AND                 BRONSON LIPSKY LLP
PARAGRAPH H

Dated: November ___, 2013

                                        _____
                                        DOUGLAS B. LIPSKY
                                        630 Third Avenue, Fifth Floor
                                        New York, New York 10017-6705
                                        Phone:  212.392.4772
                                        dl@bronsonlipsky.com

                                        Jeffrey M. Gottlieb (JG-7905)
                                        nyjg@aol.com
                                        Dana L. Gottlieb (DG-6151)
                                        danalgottlieb@aol.com
                                        GOTTLIEB & ASSOCIATES
                                        150 East 18th Street, Suite PHR
                                        New York, New York 10003
                                        Phone:  212.228.9795

                                        *Attorneys for Plaintiff Ceka*

-25-

Executed this 20 day of _____, 2013.

_____
Myzafer Ceka, Individually and on behalf of all
other persons similarly situated, including Class and
Collective Action Members


APPROVED AS TO FORM:

Dated: November __, 2013

DAVIDOFF HUTCHER & CITRON LLP


_____
MARK E. SPUND
200 Garden City Plaza, Suite 315
Garden City, New York 11530
Phone: 516.248.6400
MES@dhclegal.com

*Attorneys for Defendants*
BRONSON LIPSKY LLP


APPROVED AS TO FORM AND
PARAGRAPH H

Dated: November 20, 2013

_____
DOUGLAS B. LIPSKY
630 Third Avenue, Fifth Floor
New York, New York 10017-6705
Phone:  212.392.4772
dl@bronsonlipsky.com

Jeffrey M. Gottlieb (JG-7905)
nyjg@aol.com
Dana L. Gottlieb (DG-6151)
danalgottlieb@aol.com
GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
Phone:  212.228.9795

*Attorneys for Plaintiff Ceka*


-25-

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MYZAFER CEKA, Individually and on Behalf of
All Other Persons Similarly Situated,

                   Plaintiff,

    v.

PBM/CMSI INC., PBM, LLC, SCOTT MAGER,
ABC CORPORATIONS #1-10, and JOHN DOES
#1-10, Jointly and Severally,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

1:12-CV-01711 (DAB) (DCF)

## IMPORTANT NOTICE OF SETTLEMENT OF WAGE/HOUR CLASS AND COLLECTIVE ACTION AND CLAIMS PROCEDURE

### IF YOU FILE A CLAIM BY [_____] AND THIS SETTLEMENT IS APPROVED BY THE COURT, YOU WILL BE ENTITLED TO RECEIVE [_____]

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| FILE A CLAIM | If you sign and mail the enclosed Claim Form to the Claims Administrator by [date to be inserted] and the Court approves the Settlement, you will receive at [$_____], less payroll withholdings. By accepting your share of the Settlement, and completing and returning the attached Claim Form, you also waive certain claims against Defendants as described in more detail in the Claim Form and below. |
| DO NOTHING | If you do nothing, you will NOT receive your share of the Settlement with Defendants, and, if the Court approves the Settlement, you will still be barred from bringing certain claims against Defendants as described below. |
| OBJECT | You may object to the terms of the Settlement with Defendants by mailing a written objection to the Court and Class Counsel by [date to be inserted]. |
| EXCLUDE YOURSELF | You may send a letter asking to be excluded from this Settlement. If you choose to exclude yourself from the Settlement, you will not receive your share of the Settlement with Defendants and you will not waive any claims against Defendants. |

    **Your legal rights and options in this settlement are explained in more detail on the following pages of this Notice.**

-1-

## I.    __INTRODUCTION__

A proposed settlement (the "Settlement") has been reached in the class action lawsuit entitled *Myzafer Ceka v. PBM/CMSI Inc., PBM, LLC and Scott Mager,* in the United States District Court Southern District of New York, which is assigned Case No. 1:12-cv-1711 (DAF) (DCF) (this "Action").

The Parties in this matter are PBM/CMSI Inc., PBM, LLC and Scott Mager (collectively, "Defendants") and Myzafer Ceka (the "Named Plaintiff"), on behalf of himself and other similarly situated current and former employees of Defendants.

Defendants do not discourage your participation in the Settlement, and the law prohibits Defendants from retaliating against you for participating in the Settlement.

**BECAUSE YOUR RIGHTS WILL BE AFFECTED BY THIS SETTLEMENT, IT IS EXTREMELY IMPORTANT THAT YOU READ THIS NOTICE CAREFULLY.**

As explained in more detail below, you must file a claim by _____ to receive a portion of the Settlement.  If you fail to file a timely and valid claim, you will receive nothing under the Settlement, but you still will be bound by the release of claims and dismissal described in this Notice.

## A.    __PURPOSE OF THIS NOTICE.__

The United States District Court Southern District of New York preliminarily approved a settlement of claims brought by the Named Plaintiff against Defendants on behalf of all individuals employed by Defendants as a "crew member," "cleaning crew member" or "porter" between March 5, 2006 and December 31, 2010 who were not compensated for all hours worked, including not being paid overtime premium pay (the "Settlement Class").  You are receiving this Notice because you are a member of the Settlement Class according to

Defendants' records.  The purpose of this Notice is to inform you about the proposed Settlement and to summarize your rights and options regarding this Action and the Settlement.

**B.      DESCRIPTION OF THIS ACTION.**

The Named Plaintiff in this Action contends that Defendants improperly denied him and other Settlement Class Members wages due them under the Fair Labor Standards Act (the "FLSA") 29 U.S.C. 201, *et seq*. and New York Labor Law ("NYLL").  More specifically, the Plaintiff alleges that: (i) Defendants failed to pay the Settlement Class Members overtime premium pay of one and one-half (1.5) times their regular hourly rate for every hour that they worked above forty (40) in a week; and (ii) Defendants failed to pay the Settlement Class Members at all for all hours worked (i.e. "off-the-clock work").

Defendants deny Plaintiff's allegations.  Defendants maintain that they fully complied with the law relative to their compensation of the Settlement Class Members.

The Named Plaintiff filed this Action in the United States District Court Southern District of New York on March 13, 2012.  The Parties conducted an investigation into the facts of this case.  Counsel for the Parties also investigated the applicable law regarding the claims and damages alleged, as well as potential defenses available in this Action.  Both sides agree that, in light of the risks and expenses associated with further litigation, this Settlement is fair and appropriate under the circumstances.

The United States District Court Southern District of New York has not ruled on the class status or merits of Named Plaintiff's claims or Defendants' defenses to those claims.

-3-

The attorneys for the Class ("Class Counsel") in this Action are:

> Douglas B. Lipsky, Esq.
> BRONSON LIPSKY LLP
> 630 Third Avenue, Fifth Floor
> New York, New York 10017-6705
> Phone: 212.392.4772
> dl@bronsonlipsky.com
> www.bronsonlipsky.com

On _____, 2013, the Court granted preliminary approval of the proposed Settlement and Release Agreement. The Court will decide whether to grant final approval for the Settlement and enter the Final Approval Order at a hearing scheduled for _____ at the United States District Court Southern District of New York, 500 Pearl Street, Courtroom 2510, New York, New York 10007.

## C.   SUMMARY OF PROPOSED SETTLEMENT.

Subject to the Court's final approval, the terms of the Settlement are as follows:

1.      Defendants will pay up to a total amount of $500,000.00 (the "Total Maximum Amount" or "the Settlement Fund") to the Settlement Class.

2.      If Defendants employed you as a "crew member," "cleaning crew member" or "porter" between March 5, 2006 and December 31, 2010 and you were not compensated for all hours worked, including not being paid overtime premium pay, and you provide the Claims Administrator (identified below) with a properly signed Claim Form on or before _____, you will receive a distribution from the Settlement Fund. The precise amount of the settlement award that you will receive will depend on (1) the number of weeks that you worked, and (2) the years in which you worked those weeks. A claim form is enclosed with this Notice.

3.      The payment to you from the Settlement Fund shall include the following: (1) fifty percent (50%) of the payment made to you from the Settlement Fund shall be (a) deemed

taxable, wage income paid under an IRS Form W-2, and (b) subject to ordinary payroll withholdings; and (2) fifty percent (50%) of the payments made to you from the Settlement Fund shall be (a) attributable to alleged liquidated damages, (b) deemed taxable, non-wage income, and (c) paid under an IRS Form 1099, and (d) excluded from ordinary payroll withholdings.

4.     Class Counsel may apply to the District Court for an award of fees, costs, and expenses in this Action (the "Fee Application"), not to exceed one-third (1/3) of the Settlement Payment, equaling $166,666.67. Defendants will not object to the reasonableness of any amount within these parameters. Any fees, costs and expenses approved by the Court will be paid out of the Settlement Fund. As part of this Settlement, you **<u>WILL NOT</u>** be required to separately pay Class Counsel for their representation of you in this Action.

5.     Class Counsel will ask the Court to authorize an enhancement payment for the Named Plaintiff in the amount of $10,000.00. This enhancement payment will be paid for the risk and service that Mr. Ceka provided on behalf of the Settlement Class. This service includes, among other things, reviewing and producing documents, attending several strategy sessions and meetings with Class Counsel, and performing other services of that nature on behalf of the Settlement Class. Any enhancement payment authorized by the Court shall be treated as non-wage income and reported on an IRS Form 1099. An individual receiving an enhancement payment should consult with his/her own tax advisor concerning the tax consequences of any enhancement payment.

6.     If the proposed Settlement is approved by the Court, (i) all Class Members who have not timely and validly requested exclusion from the Settlement (regardless of whether they actually choose to file a claim) will be bound by the terms of the proposed Settlement (i.e. the "Settlement Class Members"), (ii) any Judgment entered by the Court will be final, and (iii) all

Class Members will have released the "Released Persons" from the "Released Claims," as set forth below:

       a.     The Settlement Class Members on behalf of themselves and each of their heirs, estates, executors, administrators, assigns, transferees and representatives, hereby release and forever discharge the Released Parties (as defined below) from the all manner of actions, causes of action, lawsuits, claims, counterclaims, damages, debts, obligations, liabilities, promises, defenses, agreements, costs, expenses (including attorneys' fees), and demands of whatever kind or nature, whether based on statute, tort, contract, or other recovery theory, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that entered, arise out of or are related to any cause of action under the New York Labor Law and/or Fair Labor Standards Act that is asserted in the Complaint against the Released Parties from March 5, 2006 through December 31, 2010. ("Released Claims").

       b.     "Released Persons" means PBM/CMSI Inc., PBM, LLC and Scott Mager, all their current and former parents, subsidiaries, or corporate siblings, and, with respect to each of them, their predecessors and successors, and, with respect to each such entity, all of its past, present, and future employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, and any other persons acting by, through, under or in concert with any of these persons or entities, and their successors.

       c.     Even though the Settlement Class Members may discover facts in addition to or different from those which they now know or believe to be true regarding the subject matter of the Released Claims, each Settlement Class Member, upon the Effective Date, shall be deemed to have and by operation of the Final Approval Order shall have fully, finally and

forever settled and released any and all of the Released Claims.  This is true whether the Released Claims are known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

        d.      The Settlement Class Members agree not to sue or otherwise make a claim against Defendants or any of the Released Parties that is in any way related to the Released Claims.  The Settlement Awards and the enhancement payment shall be paid to Settlement Class Members specifically in exchange for the release of the Released Parties from the Released Claims and for the covenant not to sue concerning the Released Claims.

7.      Any unclaimed amounts remaining in the Settlement Fund following the distribution of Awards to Settlement Class Members will revert to Defendants.

8.      Upon the Final Approval Order being entered, this Action will be dismissed with prejudice.

9.      Your settlement payment will be mailed to you within twenty (20) business days of the settlement agreement becoming effective.  The settlement agreement is deemed "effective" the first business day after (i) the date on which to appeal the Final Approval Order has expired with no appeal or other judicial review having been taken or sought, or (ii) if an appeal of the Final Approval Order has been timely filed, the date the Final Approval Order is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial

review or the date the appeal(s) or other judicial review are finally dismissed with no possibility of subsequent appeal or other judicial review.

**D.      TO RECEIVE A SETTLEMENT AWARD.**

**To receive a Settlement Award, you must complete and mail a valid Claim Form (which is enclosed with this Notice) to the Claims Administrator at the address below.**

**Your Claim Form must be postmarked no later than _____.**

**Late or incomplete Claim Forms will not be honored.  If you do not submit a timely and valid Claim Form, you will not receive a Settlement Award.**

The Claims Administrator is:

> Rust Consulting, Inc.
> 625 Marquette Avenue, Suite 880
> Minneapolis, MN 55402
> Phone:  612.359.2000

A Claims Administrator is a neutral third-party that has been selected to administer the settlement in this matter, including mailing this Notice and Claim Form and mailing settlement payments.

If your address of other contact information on the Claim Form is incorrect, please make corrections on the Claim Form that you return to the Claims Administrator.  Or if your address or other contact information changes between the date you submit your Claim Form and the date you are mailed a Settlement Award, you must contact the Claims Administrator to let it know of your address change.

**No person who participates in this Settlement may be retaliated against in any way by Defendants.**

**E.**    **TO REQUEST EXCLUSION FROM THE SETTLEMENT.**

If you do <u>not</u> want to participate in the Settlement and do <u>not</u> want to be a Settlement Class Member, you must mail a written statement to the Claims Administrator at the address listed above on or before _____ stating your desire to be excluded from the Settlement.  Your written statement must include your name, address, and the dates when you worked for Defendants, and you must sign a statement stating that "I understand I am requesting to be excluded from the Parties' settlement and that I will receive no money from the Parties' settlement. I understand that if I am excluded from the Parties' settlement, I may bring a separate legal action seeking damages, but might recover nothing or less than what I would have recovered if I filed a claim under the Parties' settlement in this case."

Requests to be excluded from the Settlement that are not postmarked and mailed by _____ will be deemed null, void, and ineffective.  If you submit a timely and valid request for exclusion from the Settlement, you will <u>not</u> be eligible to receive any of the benefits under the Settlement, and you will not be bound by the terms of the Settlement.  However, you will retain whatever rights you may have against Defendants for any of the claims asserted in this Action.

**F.**    **TO OBJECT TO THE SETTLEMENT.**

If you believe the Settlement is unfair or inadequate in any respect, you may object to the Settlement by _____.  Objecting is simply telling the Court that you do not like something about the settlement.  You can object only if you remain in the Class.  Excluding yourself is telling the Court that you do not want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

To object to the Settlement, you must, personally or through an attorney, file a signed, written objection with the Court and mail a copy of your objection to Class Counsel at the following addresses:

Clerk of the Court                                    Douglas Lipsky
U.S. District Court Southern District of New York    Bronson Lipsky LLP
500 Pearl Street                                     630 Third Avenue, Fifth Floor
New York, New York 10007                             New York, New York 10017-6705

All objections must be signed, postmarked by \_\_\_\_\_, and set forth your name, address, telephone number, and the name of the case and case number (*Myzafer Ceka v. PBM/CMSI Inc., PBM, LLC and Scott Mager*, United States District Court Southern District of New York, Case No. 1:12-cv-1711).  Your objection should clearly and concisely explain why you object to the Settlement and must state whether you, or someone on your behalf, intend to appear at the Final Approval Hearing, and must identify and provide any documents upon which you objection relies, or which you intend to present at the Final Approval Hearing.

Any Settlement Class Member may appear, personally or through an attorney, and may speak at, the Final Approval Hearing.  You are not, however, required to attend, or speak at, the Final Approval Hearing.  If you file an objection, the Court will consider your objection even if you do not attend the Final Approval Hearing.  If you choose to retain your own attorney to appear in this case, file an objection, or appear at the Final Approval Hearing, this will be at your own expense.

Any Settlement Class Member who does not object in the manner provided above shall be deemed to have waived any objections, and shall be forever foreclosed from objecting to the fairness or adequacy of the proposed Settlement, the claims process, the service payments, and all other aspects of the Settlement.

If the Settlement is not approved, the lawsuit will continue to be prepared for class certification and trial, or other judicial resolution.

**IF YOU FILE AN OBJECTION, YOU MUST ALSO SUBMIT A TIMELY AND VALID CLAIM FORM IN ORDER TO RECEIVE ANY MONEY FROM THE SETTLEMENT IF THE COURT APPROVES IT.**

**G**     **IF YOU DO NOTHING.**

If you do nothing in response to this Notice, you will not receive any benefits under the Settlement, but you will be bound by the terms of the Settlement and be deemed to release all of your claims against Defendant and the Released Parties that fall within the definition of Released Claims, except for your FLSA claims.

**H.**     **FINAL APPROVAL HEARING ON PROPOSED SETTLEMENT.**

The Final Approval Hearing on the fairness and adequacy of the proposed Settlement, the plan of distribution, attorneys' fees and costs, and service payment will be held at _____ _____ in the United States District Court Southern District of New York, 500 Pearl Street, Courtroom 2510, New York, New York 10007. The Final Approval Hearing maybe rescheduled without further notice. If the hearing is rescheduled, Class Counsel will notify any Class Member who timely submits an objection of the new date and time.

**I.**     **ADDITIONAL INFORMATION.**

This Notice only summarizes the lawsuit, the Settlement and related matters. For more information, you may inspect the Court files, including the Joint Stipulation of Settlement and Release, at Office of the Clerk of the Court, located at United States District Court Southern District of New York, 500 Pearl Street, New York, New York 100071, during the hours the court is open.

Any questions regarding this Notice or the Claim Form should be directed to the Class Counsel at the above address and telephone number.

If your address changes, or is different from the address on the envelope enclosing this Notice, please promptly notify the Claims Administrator.

**J.     CLAIM DEADLINE REMINDER.**

If you wish to submit a claim and receive a portion of the settlement payment, you must complete and return the enclosed Claim Form to the Class Counsel on or before

_____

**PLEASE DO NOT CALL OR WRITE THE COURT ABOUT THIS NOTICE.**

**IF YOU HAVE QUESTIONS, CALL**

**CLASS COUNSEL AT 212-392-4772.**

**BY ORDER OF THE**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MYZAFER CEKA, Individually and on Behalf of
All Other Persons Similarly Situated,

                Plaintiff,

      v.

PBM/CMSI INC., PBM, LLC, SCOTT MAGER,
ABC CORPORATIONS #1-10, and JOHN DOES
#1-10, Jointly and Severally,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

1:12-CV-01711 (DAB) (DCF)

## TIME SENSITVE FORM FOR CLAIM

[Name to be inserted by Claims
Administrator]

[Address to be inserted by Claims
Administrator]

_____
Name

_____
Street Address, Apartment Number

_____
City, State Zip Code

If your name or address is different from those shown above, print the corrections on the lines
above and to the right.

**TO BE ELIGIBLE TO RECEIVE MONEY FROM THIS SETTLEMENT, IF
APPROVED BY THE COURT, YOU MUST COMPLETE AND MAIL THIS FORM
POSTMARKED BY _____. ALL UNTIMELY CLAIMS WILL BE REJECTED**

**YOU MUST <u>SIGN</u> AND MAIL THIS CLAIM FORM TO THE CLAIMS
ADMINISTRATOR:**

Rust Consulting, Inc.
625 Marquette Avenue, Suite 880
Minneapolis, MN 55402

**YOU MAY MAIL A PROPERLY COMPLETED AND SIGNED CLAIM FORM
IN THE SELF-ADDRESSED, POSTAGE PREPAID ENVELOPE ENCLOSED
WITH YOUR NOTICE**

## INSTRUCTIONS

1.     You must <u>sign</u> and <u>mail</u> this Claim Form in order to receive your share of the Settlement in the amount of $_____, [inserted by Claims Administrator] less payroll withholdings.  Your properly completed and signed Claim Form must be postmarked on, or before, _____, or it will be rejected.

2.     If you move, please send your new address to the Claims Administrator at the address indicated above.  It is <u>your responsibility</u> to keep a current address on file with the Class Counsel.

3.     If you sign and mail this Claim Form, postmarked on, or before, the date above, and provided the Court gives final approval to the Settlement, you will be sent checks in the gross amount of $_____, [inserted by Claims Administrator] less payroll withholdings based on when you worked for Defendant as provided in the Settlement Agreement.

4.     Submitting a claim will not impact your employment with Defendants in any way.

5.     You may, but are not required to, complete and return the enclosed Form W-9 and Form W-4 by [insert date].  Timely returning properly completed Forms may limit tax withholding on your share of the Settlement.

6.     **Yes, I wish to participate in this case and be a part of this settlement, if the Court approves it.**  My signature on the next page represents my understanding that I am opting into this case under the Fair Labor Standards Act ("FLSA") and that I am providing a full and complete release of PBM/CMSI Inc., PBM, LLC and Scott Mager, all their current and former parents, subsidiaries, or corporate siblings, and, with respect to each of them, their predecessors and successors, and, with respect to each such entity, all of its past, present, and future employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, and any other persons acting by, through, under or in concert with any of these persons or entities, and their successors, from all manner of actions, causes of action, lawsuits, claims, counterclaims, damages, debts, obligations, liabilities, promises, defenses, agreements, costs, expenses (including attorneys' fees), and demands of whatever kind or nature, whether based on statute, tort, contract, or other recovery theory, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that entered, arise out of or are related to any cause of action under the New York Labor Law and/or Fair Labor Standards Act that is asserted in *Ceka v. PBM/CMSI Inc., et al..* from March 5, 2006 through December 31, 2010.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____     _____
Sign Your Name Here                                   Date of Signing this Claim Form


_____     _____
Print Your Name Here                                   Former Names (if any)

_____     _____
Daytime Phone Number                                 Evening Phone Number


_____
Street Address


_____
City                                    State                 Zip Code


_____
Email Address

# EXHIBIT C

*Ceka v. PBM/CMSI INC, et al.*, 1:12-cv-1711 (DAB) (DCF)
SETTLEMENT FORMULA

Key Terms:
Total settlement fund: $500,000.00
(Proposed) attorneys' fees and reimbursable expenses: 1/3 of total settlement fund
Enhancement Payment: $10,000.00

Total attorneys' fees and reimbursable expenses: $166,666.67
Total remaining fund for claims (referred to below as "claim fund"): $323,333.33 ($500,000.00 -
$166,666.67 - $10,000.00). The employer's share of FICA, FUTA and SUTA will be paid from
the claim fund.

Weeks For Class:
Total weeks worked by all class members: 2,034
Total weeks worked by class members between 2006 and 2008: 1,488
Total weeks worked by class members between 2009 and 2010: 546

Calculations:
Step 1: Divide total claim fund by total number of weeks worked by all class members to
determine raw value of each week.

$323,333.33 ÷ 2,034 = $158.96

Step 2: Revalue 1 week for weeks worked between 2006-2008 and 2009-2010 to reflect the
compensation owed from 2006-2008 is for unpaid overtime premium and 2009-2010 is for off-
the-clock work. Average overtime premium owed for weeks worked between 2006-2008 is
$9.93. Average unpaid compensation for weeks worked between 2009-2010 is $21.34. Thus,
the value of a single week worked between 2009-2010 is 2.15 times a single week worked
between 2006-2008: $21.34 ÷ $9.93 = 2.15

Multiply total number of weeks worked between 2009-2010 by 2.15: 546 x 2.15 = 1,173.18

Add 1,173.18 to the total number of weeks worked between 2006-2008: 1,173.18 + 1,488 =
2,661.18

2,661.18 now represents the total weeks at issue

Step 3: Establish a dollar value of each week by dividing total claim fund by total number of
weeks. $323,333.33 claim fund ÷ 2,661.18 total number of weeks = $121.50

Step 4: Determine value of 1 week worked between 2006-2008 and the value of 1 week worked
between 2009-2010
2006-2008: $121.50
2009-2010: $121.50 x 2.15 = $261.06

Step 5: Recalculate the total value of all possible claims to confirm these calculations result in the claim fund total ($323,333.33 ).  The calculations below assume that all class members file claim forms.

2006-2008: 1,488 weeks x $121.50 = $180,791.97

2009-2010: 546 weeks x $261.06 = $142,541.37

Add the total recovery for both groups: $180,791.97+ $142,541.37 = $323,333.33

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MYZAFER CEKA, Individually and on Behalf of           :     ECF CASE
All Other Persons Similarly Situated,
                                                      :
               Plaintiff,                             :     1:12-CV-01711 (DAB) (DCF)
                                                      :
       v.                                             :
                                                      :
PBM/CMSI INC., PBM, LLC, SCOTT MAGER,                 :
ABC CORPORATIONS #1-10, and JOHN DOES                 :
#1-10, Jointly and Severally,                         :
                                                      :
               Defendants.                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER AND FINAL JUDGMENT
## OF DISMISSAL OF CLASS ACTION WITH PREJUDICE

This matter came before the Court on the application of the parties for approval of the

settlement set forth in the Settlement and Release Agreement dated _____ and the exhibits

annexed thereto (the "Agreement") relating to the above-captioned class action.  The Court

having held a final Approval Hearing on _____ and considered all papers filed and

proceedings had herein and otherwise being fully informed of the premises and good cause

appearing therefore, it is on this _____ day of _____, 2014 HEREBY ORDERED THAT:

        1.    This Court has jurisdiction over the subject matter of this litigation, and

over all parties to this litigation, including all the Class Members.

        2.    For purposes of this Order and Final Judgment, the Court adopts and

incorporates the definitions set forth in the Agreement.

        3.    This Court hereby approves the settlement set forth in the Agreement and

finds that the settlement is, in all respects, fair, reasonable, adequate and in the best interests of

the Class in accordance with Rule 23(e) of the Federal Rules of Civil Procedure and 29 U.S.C. §

216, as appropriate, and directs implementation of all its terms and provisions, including, but not limited, to:

    (i)  Defendants to pay to the claims administrator, Rust Consulting, Inc. ("Rust Consulting"), the Gross Fund in the amount of $500,000.00 within ten (10) business days after the Agreement is effective;

    (ii)  Directing Defendants' counsel to direct Rust Consulting to mail the Settlement Shares to the Settlement Class Members within twenty (20) business days after the Agreement is effective;

    (iii)  Directing Defendants' counsel to direct Rust Consulting to mail the Service Award in the amount of $10,000.00 to the Named Plaintiff within twenty (20) business days after the Agreement is effective; and

    (iv)  Directing Defendants' counsel to direct Rust Consulting to mail to Class Counsel the award of attorneys' fees and expenses in the total amount of One Hundred Sixty-Six Thousand Sixty-Six Hundred Dollars and Sixty-Seven Cents ($166,666.67).

    4.  The Court hereby dismisses with prejudice and without costs Plaintiff's Complaint and all Claims asserted therein.

    5.  Other than Class Members who exercised their right to opt-out of the Settlement Class, all other Class Members are hereby conclusively deemed to have released or discharged the Released Parties from, and are permanently enjoined and barred from asserting, either directly or indirectly, against the Released Parties, any and all Claims. All such matters are hereby finally concluded, terminated and extinguished.

    6.  The notice given to Class Members fully and accurately informed the Class Members of the proposed settlement, was the best notice practicable under the

circumstances, and constituted valid, due and sufficient notice to all Class Members, complying fully with Fed. R. Civ. P. 23, the Fair Labor Standards Act, 29 U.S.C. section 201, *et seq.*, the United States Constitution, and any other applicable laws, as appropriate.

7.      Without affecting the finality of this judgment in any way, this Court hereby retains jurisdiction over consummation and performance of the Agreement.

8.      The above-captioned action is hereby dismissed in its entirety, with prejudice to Plaintiffs and Class Members, and with no further award of attorneys' fees or costs or expenses by the Court, except as awarded herein.

SO ORDERED.

Dated: New York, New York
_____, 2014


_____
The Honorable Deborah A. Batts, U.S.D.J.